**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03421-___-___

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

    Plaintiff,

v.

**ARTHUR J. GALLAGHER & CO.,**

    Defendant.

## COMPLAINT

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991 ("Title VII"), and Title I of the Americans With Disabilities Act, as amended ("ADA"), to correct unlawful employment practices on the basis of religion and disability, and to provide appropriate relief to Charging Party Yu "Rex" Noda ("Noda"). As alleged with greater particularity below, Defendant Arthur J. Gallagher & Co. ("Gallagher") discriminated against Noda because of his religious beliefs and practices, including Noda's fasting for Lent, and because of Noda's actual or perceived disability.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 107(a) of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12117(a), which

incorporates by reference Section 706(f)(1) and (3) of Title VII, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

3. Venue lies in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII of the Civil Rights Act of 1964, and Title I of the ADA.  The Commission is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), and by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII.

5. At all relevant times, Arthur J. Gallagher & Co. ("Defendant," or "Gallagher"), a Delaware corporation, has continuously been doing business in the State of Colorado and in the municipality of Centennial, Colorado.

6. At all relevant times, Gallagher has continuously had at least 15 employees.

7. At all relevant times, Gallagher has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h); and under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5) & (7).

8. At all relevant times, Gallagher has had more than 500 employees.

## ADMINISTRATIVE PROCEDURES

9. More than thirty days prior to the institution of this lawsuit, Yu "Rex" Noda filed a charge with the Commission alleging violations of Title VII and the ADA by Defendant.

10. On September 8, 2020, the Commission issued a Letter of Determination to Gallagher, finding reasonable cause to believe that Title VII and the ADA were violated.

11. The Commission invited Defendant to join in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

12. Defendant declined the opportunity to participate in conciliation.

13. On September 17, 2020, the Commission sent Defendant notice that conciliation efforts had failed.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

15. Since at least April 19, 2019, Gallagher has engaged in unlawful employment practices at its Centennial, Colorado office, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), and Section 102 of Title I of the ADA, 42 U.S.C. § 12112, as further detailed herein.

16. Gallagher hired Mr. Noda as a Client Underwriting Associate on or around August 30, 2018.

17. Noda's direct supervisor was Matt Kessel, Financial Benefits Manager (Rocky Mountain Region).

18. Noda worked in a group under the overall supervision of Area President, Ben Anderson.

19. While Noda worked for Gallagher, the Director of Operations in the Centennial Office was Angela Arguello.

20. While Noda worked for Gallagher, the Regional Human Resources Manager with responsibility for the Centennial office was Sherrell Campbell, who was based in Seattle, Washington.

21. Noda has sincerely-held Christian religious beliefs.

22. Noda attends church worship services regularly, most commonly at Aurora Hills Church, in Aurora, Colorado, an American Baptist Church and member of the American Baptist Churches of the Rocky Mountains (ABCRM).

23. As part of his religious expression, Noda wears a bracelet with a visible Cross.

24. Noda has described his bracelet as "carrying the Cross I bear."

25. As part of his religious observance, Noda undertook a fast in conjunction with Lent in 2019.

26. Noda had multiple conversations with co-workers regarding his fast.

27. Noda informed multiple co-workers who had asked him about his fast that his fast was in observance of Lent and a part of his Christian faith.

28. At least one co-worker made pejorative statements about Noda's religion, such as characterizing his fasting as a "diet fad," and saying Noda's religious beliefs were "bullshit" or "stupid."

29. Gallagher's managers were aware of Noda's religious beliefs and practices, including his fasting.  For example:

    a. Area Manager Anderson knew of Noda's religious beliefs.

      b. Anderson knew that Noda had fasted in connection with his Christian faith.

      c. Anderson had heard that Noda's fast was to replicate the fast of Jesus, "to be more like Jesus," or other characterizations confirming Noda's fast was religious.

      d. Director of Operations Arguello also knew Noda had undertaken a 40-day fast.

      e. Arguello knew Noda's fast was at the time of Lent in 2019.

      f. On information and belief, Arguello knew Noda's fast was for Lent and religious.

30. Gallagher's managers also received reports that Noda had been "chanting" or "meditating" in an office building stairwell.

31. Without first speaking with Noda, Gallagher's managers concluded Noda's reported conduct in the stairwell was religious in nature.

32. On information and belief, Gallagher's managers' conclusion about Noda's conduct in the stairwell was based on their perception of his religious beliefs and practices.

33. On or around June, 3, 2019, Noda reported to work with his hands bandaged. He had burned his hands at home, outside work hours.

34. On June 4, 2019, at 9:00am, the same co-worker who had previously made insulting comments about Noda's religion sent an email to Noda's Supervisor, Kessel, asking, in part, "Do we think [Noda] is of sound mind?"

35. On June 4, 2019, Gallagher's managers set up a meeting between Noda, his supervisor Kessel, and Operations Manager Arguello (the "June 4, 2019 meeting").

36. Gallagher, through its managers, required Noda to participate in the June 4, 2019 meeting.

37. In preparation for the June 4, 2019 meeting with Noda, Regional Human Resources Manager Campbell, Area President Anderson, Noda's Supervisor, Kessel, and Operations Manager Arguello exchanged emails among themselves between 10:50am and 12:21pm on June 4, 2019, with the subject line "Discussion Points."

38. In these "Discussion Points" emails, Kessel wrote, "Based on our conversation, below are the talking points we will use in our discussion with [Noda]."

39. According to these "Discussion Points" emails, the purpose of the meeting with Noda was "to discuss [Noda's] recent behavior."

40. The "Discussion Points" emails included the statement that, "[t]his latest incident of the burns to your hands, has many in the office concerned."

41. The "Discussion Points" emails also listed "40 day fasting" and "meditating in the stairwell" among actions Gallagher sought to address with Noda.

42. The "Discussion Points" emails anticipated that Noda might "cite" his religion and might request religious accommodation.

43. Gallagher called the June 4, 2019 meeting with Noda, in whole or in part, to address actions that Gallagher's managers perceived as related to Noda's religious beliefs and observance.

44. Gallagher called the June 4, 2019 meeting with Noda, in whole or in part, because Gallagher's managers perceived Noda's actions as related to a mental impairment that substantially limited one or more major life activities.

45. Gallagher called the June 4, 2019 meeting with Noda, in whole or in part, because Defendant's managers viewed the injuries to Noda's hands as an impairment which substantially limited one or more major life activities.

46. Gallagher's managers viewed each of the "behaviors" addressed during the June 4, 2019 meeting as problematic.

47. During the June 4, 2019 meeting, Kessel and Arguello asked Noda about his 40-day fast for Lent.

48. During the June 4, 2019 meeting, Kessel and Arguello asked Noda to explain his fasting.

49. During the June 4, 2019 meeting, Kessel and Arguello asked Noda about the burns to his hands.

50. During June 4, 2019 meeting, Kessel and Arguello asked Noda about actions Gallagher's managers understood to be Noda "meditating."

51. During the June 4, 2019 meeting, Noda raised his Christian faith.

52. During the June 4, 2019 meeting, Gallagher's managers believed or were concerned that Noda might have a mental impairment.

53. During the June 4, 2019, Gallagher's managers sought information related to their perception that Noda might have a mental impairment.

54. During the June 4, 2019 meeting, Gallagher's managers offered Noda information about Gallagher's Employee Assistance Program ("EAP").

55. Gallagher's written documentation of the June 4, 2019 meeting, including the "Discussion Points" emails listing topics Gallagher's managers wanted to address, does not identify any concerns with Noda's performance of work assignments.

56. During the June 4, 2019 meeting, Noda was not told that he faced any discipline, including termination.

57. Arguello's notes from the June 4, 2019 meeting do not document any discussion of concerns about Noda's performance of work assignments.

58. During the June 4, 2019 meeting, Arguello and Kessel did not raise any concerns about Noda's performance of work assignments.

59. Arguello's notes from the June 4, 2019 meeting state that Noda's supervisor, Kessel, "didn't talk to [Noda] in [a] serious tone."

60. The day after the June 4, 2019 meeting, on or around June 5, 2019, Noda's supervisor, Kessel, took Noda out for ice cream.

61. Kessel's supervisory log does not describe any communications with Noda on June 3–5, 2019 as disciplinary actions, warnings, or as related to Noda's performance of work assignments.

62. On or around Thursday, June 6, 2019, through Monday, June 10, 2019, Noda was off work on previously-scheduled leave.

63. Noda was scheduled to return to his regular work hours beginning Tuesday, June 11, 2019.

64. Gallagher discharged Noda by email sent on Monday, June 10, 2019, at 2:57 p.m.

65. Specifically, Regional Human Resources Manager Campbell sent an email to Noda stating, "I am writing to let you know that effective today, June 10, 2019, your employment with [Gallagher] has been terminated."

66. Campbell's email to Noda attached a "Termination Memo," dated June 10, 2019.

67. The Termination Memo states, in part:

> On June 3, 2019 [*sic*], we discussed the need to bring your performance/behavior in line with expectations and professional decorum. During our conversation, you acknowledged and recognized how the prior behavior has led to an uncomfortable work environment. (I.e, 40-day fasting, burned hands and meditating in the stairwell.)  For these reasons, we are terminating your employment effective June 10, 2019.

68. The Termination Memo wrongly states the date of the June 4, 2019 meeting as June 3, 2019.

69. The Termination Memo did not identify any problems with Noda's performance of work assignments.

70. The only reasons for discharge Gallagher identified in the Termination Memo are those quoted in Paragraph 67, above.

71. Noda did not read Campbell's discharge email or Termination Memo on June 10, 2019, while he was still out of work on scheduled leave.

72. Noda reported to work as scheduled on the morning of June 11, 2019.

73. When Noda reported to work on June 11, 2019, Area President Anderson informed Noda he had been discharged.

74. Prior to the June 4, 2019 meeting, Gallagher had never given Noda any written notice or warning that his behaviors—including fasting for Lent or meditating—could lead to discharge.

75. In 2018 and 2019, Gallagher's usual practice was to place employees with whom Gallagher had performance concerns on Performance Improvement Plans.

76. Gallagher placed other employees in the Centennial office with whom it had performance concerns on Performance Improvement Plans.

77. Gallagher never placed Noda on a Performance Improvement Plan.

78. During 2018 and 2019, Gallagher's usual practice was to provide employees with whom Gallagher had performance concerns with written warnings, including written documentation of verbal warnings.

79. Gallagher never gave Noda any written warnings about his performance.

80. Gallagher never gave Noda any written documentation of verbal warnings.

81. Gallagher never gave Noda any written warnings about the "behaviors" listed in the Termination Memo as reasons for his discharge.

82. Prior to his discharge, Noda was never formally disciplined by Gallagher.

83. Prior to his discharge, Gallagher never gave Noda notice that he faced discipline or discharge for any reason, including for actions or conduct Gallagher considered unacceptable.

### FIRST CLAIM FOR RELIEF
*Discrimination Based on Religion—42 U.S.C. § 2000e-2(a)*
*(Disparate Treatment, Discharge)*

84. The Commission reasserts and fully incorporates all of the allegations above.

85. Since at least April 19, 2019, Defendant has engaged in unlawful employment practices in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2(a), by discriminating against Charging Party Noda because of his religion.

86. Based on his sincerely held religious beliefs, Noda is a protected individual under Section 703 of Title VII.

87. Defendant's managers were aware that Noda had sincerely held religious beliefs.

88. Defendant's managers knew certain of Noda's actions, including his fasting in conjunction with Lent in 2019, were related to his religious beliefs.

89. At the time he was hired, Noda was qualified for his job with Gallagher.

90. At the time he was terminated, Noda remained qualified for his job with Gallagher.

91. At all relevant times, Noda's job performance was satisfactory.

92. Defendant discharged Noda because of his religion or his religious practices, in violation of Section 703(a) of Title VII.

93. Defendant discriminated against Noda because of his religion or religious practices in violation of Section 703(a) of Title VII by treating him less favorably than other employees who did not share his religious beliefs or practices.  This includes, without limitation, by treating Noda less favorably in Defendant's administration of personnel and disciplinary procedures.

94. The effect of Defendant's discriminatory actions was to deprive Noda of equal employment opportunities.

95. At all relevant times, Defendant was aware that discrimination based on an employee's religion is unlawful under Title VII.

96. The unlawful employment practices complained of above were intentional.

97. The unlawful employment practices complained of above were done with malice and/or reckless indifference to the federally protected rights of Defendant's employees, including Noda.

## SECOND CLAIM FOR RELIEF
*Discrimination Based on Disability —42 U.S.C. § 12112*
*(Disparate Treatment, Discharge)*

98. The Commission reasserts and fully incorporates all of the allegations above.

99. Since at least June 3, 2019, Defendant has engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112, by discriminating against Charging Party Noda on the basis of disability, as defined by the ADA.

100. At all relevant times, including without limitation as of June 10, 2019, Charging Party Noda was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(1).

101. At all relevant times, Noda was qualified to perform the essential functions of his position with Defendant, with or without reasonable accommodation.

102. Defendant discharged Noda on the basis of a disability as defined by the ADA, including because of a qualifying mental or physical impairment and/or because Defendant regarded Noda as having such an impairment.

103. Defendant also discriminated against Noda because of his actual or perceived disability by treating him less favorably than other employees, including, without limitation, in the administration and application of Defendant's personnel and disciplinary procedures to Noda.

104. Defendant never sought to objectively evaluate any mental or physical impairment it regarded Noda as having based on medical or other objective evidence.

105. To the extent, if any, that Defendant believed Noda presented a threat to his own safety or the safety of others, it never engaged in an individualized assessment of such risk, based on objective evidence, as required by 29 C.F.R. § 1630.2(r).

106. The effect of Defendant's discriminatory actions was to deprive Noda of equal employment opportunities.

107. At all relevant times, Defendant was aware that discrimination based on an employee's disability or because it regarded an employee as disabled is unlawful under the ADA.

108. The unlawful employment practices complained of above were intentional.

109. The unlawful employment practices complained of above were done with malice and/or reckless indifference to the federally protected rights of Defendant's employees, including Noda.

## **PRAYER FOR RELIEF**

*WHEREFORE*, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any form of workplace discrimination based on religion.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees and applicants with sincerely held religious beliefs and which eradicate the effects of its unlawful employment practices.

   C. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any form of workplace discrimination based on disability as defined by the ADA.

   D. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees and applicants with disabilities, as defined by the ADA, and which eradicate the effects of its unlawful employment practices.

   E. Order Defendant to make Noda whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, which may include but not are limited to, an offer of reinstatement or frontpay in lieu thereof, a positive job reference, and/or direct assistance in securing employment substantially similar to Noda's employment with Defendant.

   F. Order Defendant to make Noda whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to medical expenses, including those related to the injuries to Noda's hands; insurance costs and expenses, including, without limitation, insurance premiums and/or COBRA payments incurred to maintain access to health care after discharge; job search expenses; transportation and vehicle expenses related to seeking employment and/or later employment; and other out-of-pocket pecuniary losses resulting from Defendant's unlawful employment practices, in amounts to be determined at trial.

   G. Order Defendant to make Noda whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including

emotional pain, anxiety, suffering, inconvenience, loss of enjoyment of life, humiliation, embarrassment, and mental distress, in amounts to be determined at trial.

    H.    Order Defendant to pay Noda punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

    I.    Grant such further relief as the Court deems necessary and proper in the public interest.

    J.    Award the Commission its costs of this action.

Respectfully submitted, November 18, 2020.

> Sharon Fast Gustafson
> General Counsel
>
> Robert Canino
> Acting Deputy General Counsel
>
> Gwendolyn Reams
> Associate General Counsel
>
> Mary Jo O'Neill
> Regional Attorney
>
> Rita Byrnes Kittle
> Supervisory Trial Attorney
>
> /s/ *Nathan D. Foster*
> Trial Attorney
> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
> Denver Field Office
> 950 17th Street, Suite 300
> Denver, CO 80202
> Tel:    720.779.3634
> Email: nathan.foster@eeoc.gov

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorney(s). Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.